AMELIA COUNTY SCHOOL
BOARD, Plaintiff,

v.

VIRGINIA BOARD OF EDUCATION,
Mark A. Farley, George W. Farley,
and Betty L. Farley, Defendants.

COUNTY SCHOOL BOARD OF
HENRICO COUNTY,
VIRGINIA, Plaintiff,

v.

David COMPTON and Amelia
Compton, Defendants.

Civ. A. Nos. 87–0297–R, 87–0298–R.

United States District Court,
E.D. Virginia,
Richmond Division.

June 8, 1987.

James P. McElligott, Jr., McGuire, Woods, Battle & Boothe, John A. Gibney, Jr., Kathleen S. Mehfoud, Lacy & Mehfoud, Richmond, Va., for Amelia County School Bd.

Kelley H. Brandt, American Civil Liberties Union Foundation of Virginia, Inc., Donald H. Stone, Youth Advocacy Clinic, T.C. Williams School of Law, University of Richmond, Richmond, Va., for ACLU Foundation of Va.

Joan W. Murphy, Asst. Atty. Gen., Kimberly S. Ritchie, Richmond, Va., for Virginia Bd. of Educ.

J.T. Tokarz, Henrico County School Bd., Highland Springs, Va., for County School Bd. of Henrico County, Va.

Frank M. Feibelman, Peter W.D. Wright, Wright & Associates, Richmond, Va., for Mark A. Farley, George W. Farley, Betty

L. Farley, David Compton and Amelia Compton.

## MEMORANDUM AND ORDER

SPENCER, District Judge.

Civil Action Numbers 87–0297–R and 87–0298–R were removed to this Court by defendants. Plaintiffs now move to remand the actions to the appropriate state courts. Because identical issues and arguments have been presented in the two cases, the Court consolidates them for purposes of these motions only. For reasons stated below, plaintiff's motions will be granted, and the actions will be remanded to the state system.

### Background
### Civil Action Number 87–0297–R

Plaintiff is the Amelia County School Board, the entity responsible under Virginia law for the supervision of the Amelia County Public Schools. Defendant Mark A. Farley, a resident of Amelia County, Virginia, was enrolled in Amelia County Public Schools and received special education services from 1983 to 1985. Since September 1985, he has attended private school. Defendants George W. Farley and Betty L. Farley, also Amelia County residents, are Mark's parents. Defendant Virginia Board of Education is responsible for preparing and supervising the implementation of special education programs by the local school divisions.

As required by law, plaintiff developed an Individualized Educational Program (IEP) for Mark for the 1985–86 school year. Pursuant to that IEP, Mark was to be enrolled at Amelia County High School. Instead, Mark's parents enrolled him in The New Community School, a private facility located in Richmond, Virginia.

Mark's parents requested a due process hearing, seeking tuition reimbursement for the private school placement. The hearing officer found that the School Board had complied with all procedural requirements, and that Mark would properly be educated within the Amelia County Public School system. The matter was appealed to a state reviewing officer, who reversed the hearing officer's decision, and held that the School Board should pay Mark's private school tuition.

The School Board, pursuant to Va.Code § 22.1–214 D, appealed the reviewing officer's decision to the Circuit Court for the County of Amelia. Defendants removed the action to this Court, claiming that plaintiff, through "artful pleading," has attempted to avoid federal jurisdiction. Plaintiff disagrees, and moves to remand the action to the Amelia County Circuit Court. The matter has been fully briefed by both sides, and is ripe for decision. Additionally, the American Civil Liberties Union Foundation of Virginia, Inc., together with the Youth Advocacy Clinic at the T.C. Williams School of Law at the University of Richmond, have filed a brief amici curiae opposing remand.

### Civil Action Number 87–0298–R

Plaintiff is the County School Board of Henrico County, Virginia. Defendants are Daniel Compton and Amelia Compton, Henrico County residents and the parents of Samuel Compton. Until March 1986, Samuel was enrolled in a special education program at Crestview Elementary School, within the Henrico County system.

On March 6, 1986, Samuel's parents placed him in a residential program at the Psychiatric Institute of Richmond. On March 26, 1986, Samuel was involuntarily committed for hospitalization and treatment by the Henrico County Juvenile and Domestic Relations Court. Samuel was placed at the DeJarnette Center in Staunton, Virginia, a psychiatric facility operated by the Virginia Department of Mental Health and Mental Retardation.

Defendants requested a due process hearing, seeking reimbursement for the Psychiatric Institute and DeJarnette placements, and prospective payments for appropriate residential placement. The hearing officer determined that defendants were not entitled to reimbursement for Samuel's psychiatric hospitalization, but that plaintiff must provide a residential placement for Samuel. Subsequently, the hearing officer determined that either Lit-

tle Keswick School in Keswick, Virginia or The Dooley School/St. Joseph's Villa in Richmond, Virginia were appropriate placements.

Both parties appealed. The state reviewing officer ruled that (1) plaintiff must develop and implement an IEP providing for a residential placement for Samuel, (2) the self-contained day program proposed by plaintiff was inappropriate, and (3) plaintiff should reimburse defendants for the cost of Samuel's psychiatric hospitalization since September 2, 1986.

The School Board, pursuant to Va.Code § 22.1–214 D, appealed to the Circuit Court for the County of Henrico. As in Civil Action Number 87–0297–R, the case was removed to this Court, and plaintiff now moves to remand the action. Again, the matter has been fully briefed by the parties and amici.

### Discussion

The motions before the Court concern the interplay between § 615 of the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. § 1415, and Va.Code § 22.1–214. Under the EAHCA, states may qualify for federal financial assistance by effecting "a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1). States must submit detailed plans to the Secretary of Education, which describe the state's goals and programs, and must, among other things, recognize the uniqueness of each handicapped child through the development of IEP's. *Board of Education of the Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 181–82, 102 S.Ct. 3034, 3038, 73 L.Ed.2d 690 (1982). The Commonwealth of Virginia, via Va.Code §§ 22.1–213 *et seq.*, has developed policies, plans, and procedures to comply with the dictates of the EAHCA. This method of dual federal/state regulation has been dubbed "cooperative federalism." *Town of Burlington v. Department of Education of Massachusetts*, 736 F.2d 773, 783 (1st. Cir.1984), *aff'd sub nom. Burlington School Committee v. Department of Education*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).

More specifically to the point of the matters before the Court, the EAHCA contains a provision for the appeal of administrative decisions.

> Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section, and any party aggrieved by the findings and decision under subsection (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(e)(2).

Likewise, the Virginia Code allows for such appeals, and closely tracks the language of the federal statute.

> Any party aggrieved by the findings and decision made pursuant to the procedures prescribed pursuant to subsections B and C of this section may bring a civil action in the circuit court for the jurisdiction in which the school division is located. In any such action the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines appropriate.

Va.Code § 22.1–214 D.

Defendants contend that an appeal, such as the ones in these cases, from a reviewing officer's decision, must, by nature and necessity, come within this Court's federal question jurisdiction. 28 U.S.C. § 1331. Plaintiffs, on the other hand, argue that, as the "aggrieved part[ies]," they are the

masters of their appeals, and may choose which law, state or federal, under which to appeal, and which forum, state or federal, in which to pursue those appeals.

Cognizant of the underlying principles of the EAHCA, the statutory schemes developed by the federal and Virginia legislatures, and the arguments of the respective parties, the Court must first examine the general concerns of removal jurisdiction, the "artful pleading" doctrine, and preemption. Next, with an eye towards fleshing out the "cooperative federalism" principle, the specifics of the instant cases will be addressed.

*Removal Jurisdiction, "Artful Pleading", and Preemption*

28 U.S.C. § 1441(a) provides as follows:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1447(c) requires remand, prior to final judgment, of any case which was improperly removed to the federal court. Where, as here, there is no diversity of citizenship, the removal/remand issue turns on whether federal question jurisdiction is applicable. The federal question jurisdictional statute, 28 U.S.C. § 1331, reads: "The district courts shall have original jurisdiction of all civil actions *arising under* the Constitution, laws, or treaties of the United States." (Emphasis added).

The United States Supreme Court has commented that

[s]ince the first version of § 1331 was enacted, Act of Mar. 3, 1875, ch. 137 § 1, 18 Stat. 470, the statutory phrase "arising under the Constitution, laws, or treaties of the United States" has resisted all attempts to frame a single, precise definition for determining which cases fall within, and which cases fall outside, the original jurisdiction of the district courts. Especially when considered in light of § 1441's removal jurisdiction, the phrase "arising under" masks a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system.

*Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 8, 103 S.Ct. 2841, 2845, 77 L.Ed.2d 420 (1983).

In determining whether an action arises under federal law, courts are guided by the "well-pleaded complaint" rule. That rule mandates that whether an action arises under federal law " 'must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance or defense which it is thought the defendant may interpose.' " *Id.* at 10, 103 S.Ct. at 2846 (quoting *Taylor v. Anderson,* 234 U.S. 74, 75–76, 34 S.Ct. 724–25, 58 L.Ed. 1218 (1914)).

■ The "well-pleaded complaint" rule may not be misused by litigants, however, "to defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Board,* 463 U.S. at 22, 103 S.Ct. at 2853. This exception to the "well-pleaded complaint" rule is known as the "artful pleading" doctrine. Under that doctrine, a state law claim may be recharacterized as a federal claim if two conditions are met: (1) the state law claim must be preempted by federal law, and (2) federal law must provide the plaintiff with a cause of action to remedy the asserted wrong. *Hunter v. United Van Lines,* 746 F.2d 635, 642–43 (9th Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 180, 88 L.Ed.2d 150 (1985). *See also Alameda Room, Inc. v. Pitta,* 538 F.Supp. 1072, 1075–76 (S.D.N.Y.1982).

Moreover, preemption is aptly defined in Black's: "Doctrine adopted by U.S. Supreme Court holding that certain matters are of such a national, as opposed to local, character that federal laws pre-empt or take precedence over state laws. As such, a state may not pass a law inconsistent with the federal law." Black's Law Dictionary 1060 (5th ed. 1979).

*The Merits*

Analyzing the "artful pleading" doctrine in reverse order, it is beyond dispute that federal law, i.e., the EAHCA, provides these plaintiffs with a cause of action to remedy the asserted wrongs. The crucial inquiry, however, is whether the EAHCA preempts the Virginia law claims. While no authority cited by the parties, nor any unearthed by the Court, presents the precise factual and legal settings contained in the instant actions, there does exist a relevant body of law to aid the Court's analysis.

The Court must at all times keep in mind the posture in which the cases are before it. Plaintiffs have asserted purely state law claims. They make no mention of the EAHCA or other federal statutes. In this regard, the instant actions are distinguishable from *Colin K. v. Schmidt,* 528 F.Supp. 355 (D.R.I.1981), *aff'd,* 715 F.2d 1 (1st Cir.1983). There, suit was brought in state court under, among other things, the EAHCA. The action was removed to federal court. The federal court denied a motion to remand the action to the state system because Congress had created a scheme of concurrent jurisdiction under the EAHCA, and had not "expressly provided" that removal could not be had. *Id.* at 356–57. As such, the plain language of the removal statute, 28 U.S.C. § 1441(a), controlled. Because the federal courts had original jurisdiction over the action, removal was proper. *Colin K.,* 528 F.Supp. at 356–57.

More to the point, however, the "cooperative federalism" principle set out in *Town of Burlington v. Department of Education of Massachusetts,* 736 F.2d 773, 783 (1st Cir.1984), *aff'd sub nom. Burlington School Committee v. Department of Education,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), provides an appropriate introduction to the preemption analysis. That court wrote:

> While compliance with the minimum standards set out by the federal act is mandatory for the receipt of federal financial assistance, the act does not presume to impose nationally a uniform approach to the education of children within a given disability; it requires only that a "free appropriate education," 20 U.S.C. § 1412(1), in conformity with the state's educational standards, 20 U.S.C. §§ 1401(18), 1412(6), be provided to each disabled child upon individualized evaluation and planning.

*Town of Burlington,* 736 F.2d at 784 (citations and footnotes omitted).

The amici acknowledge the existence of the "cooperative federalism" approach, yet ignore its thrust. They argue that the act "sets forth the minimum standard for a free, appropriate public education, which all states must meet [to receive federal funding]. Under the theory of cooperative federalism, state statutes and regulations may vary to some degree from the federal law, *provided the minimum standards are met.*" Brief of amici curiae, at 4 (emphasis added).

The key phrase in the amici's argument, upon which they do not elaborate, is "provided the minimum standards are met." The circuit court which handed down the *Town of Burlington* opinion, upon which the amici so heavily rely, later discussed that opinion. In *David D. v. Dartmouth School Committee,* 775 F.2d 411, 419, (1st Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 1790, 90 L.Ed.2d 336 (1986), the First Circuit stated:

> We do not think Congress envisioned having handicapped childrens' plans subject to double legal standards dependent solely upon the aggrieved party's choice of forum. *Neither do we discern any intention that the federal Act preempt and reduce all standards to the federal minimum. [Town of] Burlington II [,* 736 F.2d] at 784–85. This would conflict with the cooperative federalism courts have found to be the structural principle undergirding the Act.

(Emphasis added.)

■ *Town of Burlington* and *David D.* make clear that the EAHCA does not "preempt" state law if the state standards at least match the minimum federal guidelines. The corollary of this principle would arguably be that the federal act does

preempt state law if the state standards are below the federal minimum. Case law supports this argument.

For example, in *San Francisco Unified School District v. State of California,* 131 Cal.App.3d 54, 182 Cal.Rptr. 525 (Ct.App. 1982), the school district was aggrieved by the decision of a hearing officer in regard to the IEP prepared for a handicapped child. The district filed a petition for a writ of administrative mandamus in accordance with Cal.Code Civ.P. § 1094.5. The court concluded that the EAHCA appeal procedures should have been followed. "20 U.S.C., section 1415(e)(2) should be employed by parties seeking to review an administrative hearing officer's decision rendered pursuant to the Act—particularly where state review procedures, as in California, provide lesser protection or a more limited scope of review to the party aggrieved." *San Francisco Unified School District,* 131 Cal.App.3d at 65, 182 Cal. Rptr. at 532 (footnote omitted).

Courts in Idaho, *Thornock v. Boise Independent School District No. 1,* 1984–85 EHLR Dec. 556:477, 479–80 (June 24, 1985) (Dist. Ct. of the 4th Jud. Dist.), and Nebraska, *Monahan v. State of Nebraska,* 491 F.Supp. 1074, 1084–85 (D.Neb.1980), *aff'd in part, vacated in part and remanded,* 645 F.2d 592 (8th Cir.), *sub nom. Rose v. State of Nebraska,* 530 F.Supp. 295 (D.Neb.1981), *aff'd in part, vacated in part and remanded sub nom. Monahan v. State of Nebraska,* 687 F.2d 1164 (8th Cir. 1982), *cert. denied sub nom. Rose v. Nebraska,* 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 *sub nom. Monahan v. State of Nebraska,* 575 F.Supp. 132 (D.Neb.1983), *modified sub nom. Rose v. State of Nebraska,* 748 F.2d 1258 (8th Cir.1984), have also indicated that the EAHCA appeal pro-

cess must govern where the state system fails to meet the federal minimum.

The Fourth Circuit, in *School Board of Prince William County v. Malone,* 762 F.2d 1210 (4th Cir.1985), indicated that appeals pursuant to Va.Code § 22.1–87 [1], in lieu of 20 U.S.C. § 1415(e)(2) or Va.Code § 22.1–214 D, would not meet the minimum federal requirements. *Malone,* 762 F.2d at 1215 n. 9. *See also Martin v. School Board of Prince George County,* 3 Va. App. 197, 205, 348 S.E.2d 857, 862 n. 2 (1986).

Plaintiffs in the instant actions, however, are not seeking judicial review pursuant to Va.Code § 22.1–87. Rather, they are proceeding under Va.Code § 22.1–214 D. The safeguards provided for in § 22.1–214 D are identical to those required by 20 U.S.C. § 1415(e)(2). Under both statutes, the court receives the records of the administrative proceedings, hears additional evidence at the request of a party, bases its decision on the preponderance of the evidence, and grants such relief as the court deems appropriate.

■ It is clear to this Court, then, that the Virginia statute is on a par with the federal requirements. But this Court need not rely on its own judgment in arriving at such a conclusion. Rather, the Fourth Circuit has stated: "In Virginia the federal statute [20 U.S.C. § 1415(e)(2) ] is complemented by § 22–10.4(D) (Supp.1979) [the precursor to the current § 22.1–214 D], which authorizes the aggrieved party to file an action in the circuit court of the jurisdiction where the school is located. *The state statute, in other respects, is identical to the federal.*" *Scruggs v. Campbell,* 630 F.2d 237, 238 (4th Cir.1980) (emphasis added).

1. Va.Code § 22.1–87 reads as follows:

Judicial review.—Any parent, custodian, or legal guardian of a pupil attending the public schools in a school division who is aggrieved by an action of the school board may, within thirty days after such action, petition the circuit court having jurisdiction in the school division to review the action of the school board. Such review shall proceed upon the petition, the minutes of the meeting at which the school board's action was taken, the orders, if any, of the school board, an attested copy of the transcript, if any, of any hearing before the school board, and any other evidence found relevant to the issues on appeal by the court. The action of the school board shall be sustained unless the school board exceeded its authority, acted arbitrarily or capriciously, or abused its discretion.

*Scruggs* involved dual litigation in the federal and state court systems. The federal district court, concluding that it should abstain due to the existence of the state court action, dismissed the federal suit. The Fourth Circuit affirmed. In so doing, it commented on the interrelation of the relevant state and federal appellate provisions.

Congress did not intend judicial consideration of the controversy in both federal and state courts. By giving the party aggrieved by the final administrative decision the option to proceed in either forum, the statute avoids simultaneous litigation in both. In this case, the board as the party aggrieved by the final administrative decision could elect to bring its action in the Circuit Court of Pittsylvania County.

The Circuit Court of Pittsylvania County is a court of record exercising plenary jurisdiction. Va.Code § 17–123 (Supp. 1980). Virginia rules of practice 2:13 and 3:8 (2 Va.Code 1977), pertaining to counterclaims, are broad. With respect to the education of handicapped children, Va. Code § 22–10.4(D) (Supp.1979) authorizes the state court to "grant such relief as the court determines is appropriate." This is identical to the authority conferred on federal courts by 20 U.S.C. § 1415(e)(2). Therefore, in the absence of a decision by the Virginia Supreme Court limiting the relief available to the parents of a handicapped child, we will not anticipate that persons in the position of the Scruggs could obtain greater relief in the federal court than in the state.

*Scruggs*, 630 F.2d at 239.

■ The last sentence of the above-quoted language is sufficient to prevent Va. Code § 22.1–214 D from being preempted by the EAHCA. Because it is abundantly clear that Virginia does meet the minimum federal requirements, the preemption prong of the "artful pleading" doctrine has not been met, and the "well-pleaded complaint" rule governs. Consequently, plaintiffs are the masters of their claims, and can rightly pursue those claims in state court under state law.

\*　　\*　　\*

Plaintiffs' motions to remand are hereby GRANTED. Civil Action Number 87–0297–R is REMANDED to the Circuit Court for the County of Amelia. Civil Action Number 87–0298–R is REMANDED to the Circuit Court for the County of Henrico.

In light of the above rulings, the Court finds it inappropriate to rule on defendant Virginia Board of Education's motion to dismiss in Civil Action Number 87–0297–R.

And it is so ORDERED.